IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CATHERINE POWELL REGAN, ) | CIVIL ACTION NO.: 2:10-CV-1810-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| PALMETTO PRINCE GEORGE ) | |
| OPERATING, LLC d/b/a PRINCE ) | |
| GEORGE HEALTHCARE CENTER, and ) | |
| MILLENNIUM MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, a former employee of the Defendant Palmetto Prince George Operating LLC d/b/a Prince George Healthcare Center ("Palmetto Prince"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. On September 9, 2011, Plaintiff filed a motion for summary judgment as to liability against the Defendant Palmetto Prince. The Defendant Palmetto Prince thereafter filed its own motion for summary judgment on September 12, 2011.[1] Both parties have filed responsive memoranda, and these motions are now

---

[1]The Scheduling Order entered for this case set the dispositive motions deadline for September 12, 2011. See Order filed January 14, 2011 (Court Docket No. 28). At that time the other Defendant, Millennium Management, LLC, was in default. See Court Docket No. 16. By Order filed September 16, 2011, the default against Millennium Management was vacated, with Millennium Management thereafter filing an answer to the Complaint on November 26, 2011. However, the pretrial deadlines set forth in the Scheduling Order have not been extended, nor have any such extensions been requested. See also, Report and Recommendation filed August 19, 2011, at p. 12

1

before the Court for disposition.[2]

## Background and Evidence

The Defendant Palmetto Prince operates a nursing home facility in Georgetown, South Carolina. On December 4, 2008, Plaintiff began working as the Director of Human Resources at this facility. The Administrator of the facility was Mohamed Othman. It is disputed whether Othman was Plaintiff's direct supervisor or whether her supervisor was Ronda Schmidt, whose title was Regional Human Resources Director, but who was employed by a separate company, Palmetto OpCo, LLC. Complaint, ¶ 15; Answer, ¶ 15. Palmetto Prince had a contract with Palmetto OpCo, LLC to provide operational management assistance for the facility. Schmidt Affidavit, ¶ 4; see also Plaintiff's Motion for Summary Judgment (Exhibit 3).

Plaintiff's job responsibilities included making sure that the Defendant Palmetto Prince complied with all applicable state and federal laws and regulations, including laws governing sexual harassment in the workplace. Othman Deposition, pp. 57, 61; Schmidt Deposition, pp. 40, 44, 48. On May 15, 2009, Plaintiff learned from employee Rosalyn Burgess that Othman was possibly having sexual relations with a receptionist, Danielle Guay. Plaintiff's Deposition, p. 48. Burgess had also received a telephone call from Othman after work hours telling her not to discuss rumors of an alleged affair between him and Guay. Complaint, at ¶¶ 16-17; Burgess Deposition, pp. 27-28; Othman Deposition, pp. 92-95. Plaintiff subsequently informed Schmidt that Othman

---

(Court Docket No. 48).

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant Palmetto Prince and Plaintiff have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

2

was possibly having sexual relations with a subordinate at the facility, and Schmidt advised her to let her know if she obtained any further information or a complaint was made. Complaint, ¶ 18; Answer, ¶ 18; Schmidt Deposition, p. 56; Plaintiff's Deposition, p. 63.

On June 15, 2009, Plaintiff learned that receptionist Kathleen Gilbride had had her hours reduced and was collecting unemployment compensation benefits. Plaintiff discussed the matter with Gilbride, who told Plaintiff that her hours had been reduced by Othman so that Guay could work more hours. Gilbride was told that her hours were being reduced because Guay, a full-time receptionist, had finished school and was able to return to her previous full-time weekday schedule. Gilbride Deposition, pp. 17-18.

On June 16, 2009, Lisa Lopez, who was Human Resources Manager for the Defendant Millennium Management, contacted Plaintiff to discuss an unrelated matter.[3] During the course of their conversation, Plaintiff informed Lopez that she was concerned that Othman's conduct could possibly result in a sexual harassment claim or discrimination lawsuit against the facility. Schmidt Deposition, pp. 61, 63; see also Defendant's Memorandum in Support of Summary Judgment (Exhibit 4)[Plaintiff's sworn statement]. Lopez then contacted Schmidt about Plaintiff's concerns; Schmidt Deposition, p. 64; who in turn discussed the matter with her direct supervisor, Teddie Simmons, following which she called Othman and told him to suspend the Plaintiff. Schmidt Deposition, p. 69. Othman then called Plaintiff into his office and suspended her effective immediately. Othman Deposition, pp. 88-89. The following day, June 17, 2009, Schmidt met with Othman and told him that Plaintiff had told Lopez that Plaintiff thought he was having sexual

---

[3]Like Palmetto OpCo, LLC, Millennium Management had a contract with Palmetto Prince to provide certain services, and Lopez was the person with whom Schmidt coordinated on matters relating to Human Resources. Schmidt Deposition, p. 35; Othman Deposition, pp. 51-52; see also Plaintiff's Motion for Summary Judgment (Exhibit 3).

3

relations with Guay. <u>Othman Deposition</u>, pp. 89-90. Schmidt and Othman then called Plaintiff into the office and told her that she was being terminated for violating company rules and the proper chain of command. <u>Schmidt Deposition</u>, pp. 70-71; <u>see</u> <u>also</u> Defendant's Motion for Summary Judgment (Exhibit 2). However, Plaintiff believed she was being terminated in retaliation for reporting possible sexual harassment at the facility. <u>See</u> Defendant's Motion for Summary Judgment (Exhibit 3).

On November 13, 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that she had been retaliated against for having opposed an unlawful employment practice. <u>See</u> Defendant's Motion for Summary Judgment (Exhibit 3). A notice of right to sue was issued on June 17, 2010. <u>See</u> Defendant's Motion for Summary Judgment (Exhibit 5). Plaintiff then filed this lawsuit.

## Discussion

Both parties have filed motions for summary judgment. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).

### I.

### (Exhaustion of Administrative Remedies)

The Defendant Palmetto Prince initially argues that it is entitled to summary

4



judgment as a matter of law because Plaintiff failed to properly exhaust her administrative remedies prior to filing suit against this Defendant. Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e). While it is undisputed that Plaintiff timely filed an administrative charge with the EEOC, Defendant argues that Plaintiff's administrative claim was only asserted against the Defendant Millennium Management, and therefore the notice of right to sue issued by the EEOC does not provide Plaintiff with a right to sue the Defendant Palmetto Prince. However, after careful review and consideration of the arguments and evidence presented, the undersigned does not find that the Defendant is entitled to relief on this ground.

The evidence before the Court shows that Plaintiff specifically identified Palmetto Prince as being one of the entities she wanted to file a charge of discrimination against (along with Millennium Management) when she contacted the EEOC, and that she provided contact information to the EEOC for both Palmetto Prince and Millennium Management. See Plaintiff's Exhibit 9, see also Plaintiff's Deposition, pp. 50-51. As Plaintiff was proceeding pro se at that time, the EEOC prepared the Administrative charge, which lists Plaintiff's employer as being "Millennium Management d/b/a Prince George Healthcare Center". Plaintiff's Exhibit 10; see also Plaintiff's Deposition, p. 83. It is also clear in the evidence that officials with both of the Defendants were aware of the EEOC filings. Othman Deposition, pp. 99-100, 103.



5

A Plaintiff satisfies the jurisdictional requirements of Title VII "where the party named in the complaint is for all practical purposes the same as the party named in the EEOC charge." Londeree v. Crutchfield Corp., 68 F.Supp. 2d 718, 724 (W.D.Va. 1999), affd, 210 F.3d 361 (4th Cir. 2000). Here, the parties named in the Complaint are "Palmetto Prince George Operating, LLC d/b/a Prince George Healthcare Center, and Millennium Management, LLC", while the EEOC charge names "Millennium Management d/b/a Prince George Healthcare Center". Hence, although inartfully labeled, clearly the naming and notice requirements have been met in this case. Kramer v. Windsor Park Nursing Home, Inc., 943 F.Supp. 844, 850 (S.D.Ohio 1996)[Noting that the jurisdictional requirements of Title VII should be liberally construed in favor of complainants, and that since "EEOC charges are often filed without the assistance of counsel, insisting on 'procedural exactness in stating the charge' would frustrate the remedial goals of Title VII"], case abrogated on other grounds by Wathen v. General Electric Co., 115 F.3d 400 (6th Cir. 1997); see also Londeree, 68 F.Supp. 2d at 725 [noting that inference that a defendant can anticipate being sued "is particularly strong where the parties are specifically named or referred to in the particulars of the charge"]; cf. Wrenn v. McFadden, et al., No. 85-1664, 1988 WL 92861 (4th Cir. Sept. 6, 1988)[Defendant clearly identified in narrative of EEOC charge, and who has shown no prejudice from failure to be named as a respondent, not entitled to dismissal of EEOC claim]; Lasher v. Day & Zimmerman International, Inc., No. 06-1681, 2008 WL 2705045, at * 5 (D.S.C. July 9, 2008)[Where Plaintiff's charge led to the investigation of the defendant's conduct, charges not subject to dismissal due to failure to name individual in charge].

Therefore, Palmetto Prince is not entitled to dismissal of Plaintiff's case on the ground of failure of the Plaintiff to exhaust her administrative remedies.



## II.

### (Retaliation Claim)

Plaintiff's retaliation claim is based on her allegation that the Defendant retaliated against her by firing her after she reported information she had received which she believed could possibly subject the Defendant to a claim of sexual harassment. Complaint, First Cause of Action; Plaintiff's Deposition, Exhibit 10. Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011); Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing



a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id. Pursuant to these criteria, and after careful review and consideration of the materials and arguments presented in this case, the undersigned finds that a genuine issue of fact does exist with respect to whether Plaintiff was retaliated against in violation of Title VII. Therefore, neither party is entitled to summary judgment on this claim.

First, with respect to Plaintiff's prima facia case, the evidence establishes that the Defendant took adverse action against the Plaintiff (she was fired) and that a causal connection exists between her activity and the adverse action. The only issue in dispute is whether Plaintiff engaged in *protected* activity; i.e., whether Plaintiff reporting the alleged affair Othman was having with a receptionist was protected activity under the statute. Defendant contends that it was not, because even assuming the truth of an affair, in order for Plaintiff's conduct to have constituted protected activity, she must have had a good faith, reasonable belief that the underlying conduct violated the law; see Wentz v. Maryland Casualty Co., 869 F.2d 1153, 1155 (8th Cir. 1989). Defendant argues that there is no evidence that any sexual advances (assuming they in fact occurred) were unwelcome or constituted any type of harassment toward the receptionist (Guay), and that there is therefore no evidence to support such a good faith, reasonable belief by the Plaintiff. The undersigned does not agree.

The evidence shows that, as Director of Human Resources, Plaintiff's job was to ensure compliance with all applicable state and federal laws and regulations, including laws against sexual harassment. It is also undisputed that Plaintiff had a duty to report all complaints of sexual harassment. Othman Deposition, p. 57; Schmidt Deposition, pp. 40, 44. Considered in the light most favorable to the Plaintiff, the evidence is that in May 2009 Plaintiff learned of a series of text



8

messages suggesting that Othman was having sex or an affair with Guay, a subordinate at the facility. Burgess Deposition, pp. 27-28; see also Othman Deposition, pp. 92-95. As Director of Human Resources, Plaintiff reported this information to Schmidt. After inquiring whether anyone had made a complaint or there was any proof, Schmidt advised Plaintiff to call her immediately if anything came up, following which she and the Plaintiff "talked a little bit about what exactly a sexual harassment complaint is or could be". Schmidt Deposition, p. 56. Subsequently, when Lopez, the "Corporate" Human Resources Director, called Plaintiff about another matter on June 16, 2009, Plaintiff asked Lopez if she could get her advice about another issue. Plaintiff then told Lopez that she had learned that Othman and Guay were possibly engaged in sexual activity, and that she was concerned that the Defendant might have some liability for these actions if the allegations were true. Schmidt concedes that there was no prohibition on Plaintiff speaking with Lopez; Schmidt Deposition, p. 55; while Othman also confirmed that it was proper for Plaintiff to have reported a suspicion of potential sexual harassment, and arguably even conceded that that is what Plaintiff did in this instance. Othman Deposition, pp. 83-84.

This evidence, considered in the light most favorable to the Plaintiff, is sufficient to give rise to a genuine issue of fact as to whether, by reporting this information, Plaintiff was engaging in protected activity under the Statute. Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978)[Opposition clause protects employees who oppose what they reasonably see as discrimination under the Act, and an employee need not establish that the opposed conduct in fact violated the Act in order to establish a valid claim of retaliation]; Jordan v. Alternative Resources Corp., 458 F.3d 332, 338-339 (4th Cir. 2006)[Opposition activity is protected activity when it responds to an employment practice that employee reasonably believes is unlawful]; see also Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986)["[W]hether particular conduct was



indeed unwelcome presents difficult problems or proof and turns largely on credibility determinations committed to the trier of fact . . . "]. Whether it was reasonable under the circumstances for Plaintiff, the Defendant's HR Director, to have been concerned that the Administrator of the facility having sexual relations with a subordinate could possibly give rise to a claim of sexual harassment against the Defendant, is a question of fact. See Muhammad v. Klotz, 36 F.Supp. 2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986). Further, that the conduct at issue may not ultimately prove to have been actionable sexual harassment is not dispositive of Plaintiff's claim, nor does it entitle the Defendant to summary judgment. Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988)["[A]n employee may fail to prove an 'unlawful employment practice' and nevertheless prevail on his claim of unlawful retaliation"].

While Defendant points to the case of Moberly v. Mid Continent Communication, 711 F.Supp. 2d 1028 (D.S.D. 2010), as support for its motion for summary judgment, that case does not mirror the facts presented in the case at bar. In Moberly, the Court found that Plaintiff having reported a rumor about two other employees being romantically involved had not been done in a good faith belief that the rumored relationship was unlawful under Title VII because, taking the evidence in the light most favorable to Moberly, there was no evidence that she had actually held this belief at the time she made the complaint. Rather, it was undisputed that Moberly's concern was that favoritism was being shown. Moberly, 711 F.Supp. 2d at 1046. That is not the case here, where the testimony of both Othman and Schmidt (considered in the light most favorable to the

Plaintiff) reflects that Plaintiff was making her report out of a concern that the conduct at issue could result in a claim of sexual harassment against the Defendant. Othman Deposition, pp. 83-84 [conceding that Plaintiff was reporting a concern of sexual harassment]; Schmidt Deposition, p. 56 [noting that she and Plaintiff discussed what could constitute a sexual harassment claim as part of their discussion about Othman's possible conduct].

However, considered in the light most favorable to the *Defendant*, the evidence is also sufficient to present a genuine issue for the finder of fact as to whether any such belief by the Plaintiff was in fact reasonable. Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 518 (7th Cir. 1996)[Plaintiff required to establish that he had a reasonable belief that rumors of sexual activity constituted sexual harassment]. Defendant correctly points out that at no point in time did either Guay or anybody else file a complaint or even complain about being sexually harassed or discriminated against on the basis of sex. Guay also never told Plaintiff that she was being sexually harassed, and in fact there is no evidence that Plaintiff ever spoke to Guay on this subject at all. Considered in the light most favorable to the Defendant, this evidence is sufficient to give rise to a genuine issue of fact as to whether, in reporting Othman's rumored conduct, Plaintiff was reporting conduct that she reasonably and in good faith believed was in violation of Title VII. Cf. Moberly, 711 F.Supp. 2d at 1047; Learned, 860 F.2d at 932-933 [The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination does not automatically trigger the protection afforded by § 704(a) - the underlying conduct must be such as to be reasonably perceived as discrimination prohibited by Title VII]. Therefore, Plaintiff is not entitled to summary judgment as to liability on her claim. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980)[On summary judgment, the Court is required to consider the evidence presented, and all inferences to be drawn from that evidence, in the light most favorable to the non-moving party].



11

Finally, having found that a genuine issue of fact exists with respect to establishment of the prima facie case, the Court must next turn to the remaining elements required to prove a claim of discrimination. The undersigned concludes that the Defendant's evidence showing that Plaintiff was terminated for failing to follow the chain of command and spreading unwarranted rumors is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's actions. See Defendant's Exhibit B [Disciplinary Action Record]; Schmidt Deposition, pp. 63-64, 68-71; see also EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]. However, considered in the light most favorable to the Plaintiff, the evidence is also sufficient to give rise to a genuine issue of fact as to whether the reason given for Plaintiff's termination was mere pretext, and whether the real reason for her termination was because she engaged in the activity at issue, activity protected by Title VII. LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)[In order to show pretext, "'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'"] ( citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Considered in the light most favorable to the Plaintiff, the evidence reflects that Plaintiff learned that the supervisor of the Prince George Healthcare Center was possibly engaging in sexual activity with a subordinate employee at the facility. As Director of Human Resources at the facility, Plaintiff's job included the responsibility to monitor and report conduct that could give rise to a sexual harassment or discrimination claim against the Defendant. The evidence further shows that after reporting what she had heard to the Regional Human Resources Director (Schmidt) and the Human Resources

Manager (Lopez), the supervisor (Othman) was informed of Plaintiff's actions, who then terminated her.

This evidence is sufficient to give rise to a genuine issue of fact as to whether the Defendants' stated reason for terminating Plaintiff was a mere pretext, and that the real reason she was terminated was because she reported her concern that Othman's conduct could result in a sexual harassment and/or discrimination claim being filed against the Defendant. See 42 U.S.C. § 2000(e-3)(a)["It shall be an unlawful practice for an employer . . . to discriminate against any individual . . . because [she] has made a charge . . . or participated in any manner [in an investigation or proceeding involving conduct made unlawful by Title VII"]]; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ["Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" are functions for the trier of fact]; Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)[When considering whether summary judgment for the Defendant is appropriate, the Court must assume that the Plaintiff's version of the facts is true].

### Conclusion

Based on the foregoing, it is recommended that the motions for summary judgment filed by the Plaintiff and the Defendant Palmetto Prince both be **denied**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 21, 2011
Charleston, South Carolina

13

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

